### HARTFORD & N. Y. TRANSP. CO. v. UNITED STATES.

(Circuit Court, D. Connecticut. June 13, 1905.)

SALVAGE—LIABILITY OF UNITED STATES—ASSISTING BURNING AMMUNITION SHIP.

A tug which went to the assistance of a United States vessel having on board ammunition for delivery to a war ship, in answer to her signal for help, and aided in putting out a fire which had broken out on such vessel, at considerable risk to the tug and crew on account of the nature of the cargo, the service lasting half an hour, *held* entitled to a salvage award of $500 on an implied contract, under the provisions of the Tucker act of March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752].

[Ed. Note.—Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

Wilcox & Green, for libelant.

F. H. Parker, U. S. Atty.

PLATT, District Judge. The petition in this proceeding was filed to recover a judgment for $5,000 for salvage services rendered by the steam tug Sachem to the United States vessel Pontiac and government property on board the latter, under the circumstances set forth in the findings of fact hereinafter made. It has been determined that services of this character give rise to an implied contract, within Act Cong. March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752], commonly known as the "Tucker Act." U. S. v. Morgan, 99 Fed. 570, 39 C. C. A. 653; Cornell Steamboat Co. v. The United States (D. C.) 130 Fed. 480. The facts herein establish a claim which would sustain a suit in admiralty for salvage against a vessel owned by a private party, and, under the authorities above cited, the petitioner is entitled to a judgment in its favor.

The following findings of fact and conclusion of law are made, as required by the act referred to:

### Findings of Fact.

1. The petitioner is a corporation organized under the laws of Connecticut, is a resident of that state, and at the times hereinafter mentioned owned the steam tug Sachem, which was equipped with fire and wrecking pumps, and had a crew of nine besides the master.

2. In the morning of August 21, 1903, said tug was off Tompkinsville, Staten Island, in the upper bay of New York, and the steam vessel Pontiac, owned by the United States and used for the transportation of ammunition by the navy department, was lying about a quarter of a mile away from the Sachem, with a red flag flying from her foremast. The flag indicated that the Pontiac had explosives aboard, and it was dangerous for other vessels to approach her. She was carrying a quantity of ammunition which was intended for delivery to a United States war ship lying off Tompkinsville.

3. While the Sachem and the Pontiac were in said relative positions a fire broke out aboard the Pontiac, and thereupon several blasts were given by her as a signal for assistance, and those on board the Sachem saw smoke issuing from her. The Sachem at once went to the Pontiac and assisted in extinguishing the fire.

4. Although the time consumed by the Sachem did not exceed half an hour from the time the alarm was given by the Pontiac, the services which she rendered were meritorious, and were extended under circumstances which justified the Sachem's crew in believing that they were exposing both themselves and their tug to grave danger because of the nature of the merchandise which the Pontiac was carrying.

5. Under all the circumstances, $500 will be a fair sum to allow for such services.

### Conclusion of Law.

The petitioner is entitled to judgment against the United States for the sum of $500, but without interest or costs.